DONALDSON, Judge.
Penny Cox appeals the decision of a hearing officer affirming the decision of the Mobile County Board of School Commissioners (“the Board”) to terminate Cox as its employee. The events that form the basis of this appeal occurred both before and after July 1, 2011, the effective date of the Students First Act (“the SFA”), § 16-24C-1 et seq., Ala.Code 1975, which, among other things, repealed and replaced the former Fair Dismissal Act (“the FDA”), see former § 36-26-100 et seq., Ala.Code 1975. See § 16-24C-14, Ala. Code 1975 (the effective date of the SFA is July 1, 2011). Both parties to this appeal argue based exclusively on the application of the SFA.
The record indicates that on February B, 2012, Cox was placed on administrative *899 leave. On April 4, 2012, Mobile County school superintendent Martha Peek notified Cox of her intention to recommend that the Board terminate Cox’s employment; that notice cited “failure to perform duties in a satisfactory manner” and “other good and just cause” as the grounds for the proposed termination, and, in support of those grounds, the notice contained allegations that Cox was the subject of parental complaints, that she had made racially derogatory comments regarding students and coworkers, that she had made comments about a student’s weight, that she had inappropriately tape-recorded her classes for disciplinary purposes, that she had poor classroom-management skills, that she had made negative comments to cafeteria staff, that she had failed to properly clock into work, that she had displayed an inappropriate picture to coworkers, that she had failed to follow directives, and that she had spoken harshly to students.
Cox timely contested her proposed termination, see § 16-24C-6(c), and the Board conducted a hearing at which it received evidence on August 2, 2012. At the conclusion of the hearing, the Board voted to accept the superintendent’s recommendation that Cox’s employment be terminated, and it orally informed Cox of its decision. On August 24, 2012, the Board provided Cox written notice of its decision to accept the superintendent’s recommendation that Cox’s employment be terminated. On August 27, 2012, Cox filed a notice of appeal of the Board’s decision, seeking a review by a hearing officer pursuant to § 16-24C-6(e) of the SFA.
The hearing officer conducted a hearing on November 2, 2012. February 6, 2013, the hearing officer issued a decision affirming the decision of the Board, specifically finding that the Board had provided written notice to Cox 12 days late without specifying a reason for the delay. See § 16-24C-6(d)(providing that a school board “shall give -written notice to the employee of the decision regarding the proposed termination within 10 calendar days after the vote of the board”). However, the hearing officer stated that “[tjhere is no language in the [SFA] that specifically addresses [the delay of notice] as being fatal,” and he found that “[t]he timing of the notice did not adversely affect ... Cox’s Right of Appeal or due process in this proceeding.” The hearing officer further ruled that the record was “void of personal or political reasons for termination” and affirmed the Board’s decision, holding that, based on the evidence, he could not “find the Board’s decision to be arbitrary or capricious.” Cox timely appealed pursuant to § 16-24C-12.

Standard of Review

This court recently addressed the arbitrary-and-capricious standard of review, which is applicable to appeals arising under the SFA:
“With regard to such review, this court has held:
“Tn employing the arbitrary-and-capricious standard of review, the legislature intended this court to be “extremely deferential” to the hearing officer’s decision in an FDA case. See Ex parte Dunn, 962 So.2d 814, 816 (Ala.2007) (construing arbitrary-and-capricious standard of review mandated by Teacher Tenure Act). As our supreme court has stated:
““‘[T]he reviewing court may not substitute its judgment for that of the hearing officer.... [w]here ‘reasonable people could differ as to the wisdom of a hearing officer’s decisionf,] ... the decision is not arbitrary.’ ...
“ ‘ “ ‘If the decision-maker has “‘examined the relevant data and *900 articulated a satisfactory explanation for its action, including'a “rational connection between the facts found and the choice made,” ’ ” its decision is not arbitrary. See Alabama Dep’t of Human Res. v. Dye, 921 So.2d [421, 426 (Ala.Civ.App.2005) ] (quoting Prometheus Radio Project v. FCC, 373 F.3d [372, 389 (3d Cir.2004) ] (quoting in turn Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962))).’ ”
“ ‘Ex parte Dunn, 962 So.2d at 816-17 (quoting with approval, but reversing on other grounds, Board of Sch. Comm’rs of Mobile County v. Dunn, 962 So.2d 805, 809, 810 (Ala.Civ.App.2006)). Pursuant to the arbitrary- and-capricious standard of review, this court may “disagree with the wisdom of the decision, [but] we may not substitute our judgment for that of the hearing officer.” Ex parte Dunn, 962 So.2d at 823-24.’
“Bishop State Cmty. Coll. v. Thomas, 13 So.3d 978, 986 (Ala.Civ.App.2008). As noted above, our supreme court has stated that, ‘[w]here “reasonable people could differ as to the wisdom of a hearing officer’s decision[,] ... the decision is not arbitrary.” ’ Ex parte Dunn, 962 So.2d at 816 (quoting with approval Board of Sch. Comm’rs of Mobile Cnty. v. Dunn, 962 So.2d at 809, rev’d on other grounds); Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 986.
“In both Bishop State Community College v. Thomas, supra, and Ex parte Dunn, supra, the hearing officer received evidence and was the trier of fact, and the courts reviewed the hearing officer’s decision based on that receipt of evidence under the arbitrary-and-capricious standard. In this case, the Board received evidence and was the trier of fact. The hearing officer was asked to review the Board’s decision based on that evidence. Thus, as indicated above, the hearing officer in this case was required to afford deference to the decision of the Board, even if he would have reached a different result than did the Board. § 16-24C-6(e); Bishop State Cmty. Coll. v. Thomas, supra; Ex parte Dunn, supra. In other words, the hearing officer in this case did not receive evidence, and, in reviewing the record of the proceeding before the Board, he was in no better position than is this court to review the decision reached by the Board after the presentation of evidence.”
Chilton Cnty. Bd. of Educ. v. Cahalane, 117 So.3d 363, 368 (Ala.Civ.App.2012), cert. denied, 117 So.3d 371 (Ala.2013).

Discussion

Cox raises two issues on appeal: whether the hearing officer erred in not finding that the Board had abandoned its decision to terminate Cox’s employment when it provided written notice of its decision to Cox 12 days beyond the 10-day period prescribed for providing such notice in § 16-24C-6(d) and whether the hearing officer erred in affirming the Board’s decision rather than overturning it on the basis that Cox was terminated for personal and political reasons.
Cox’s first argument hinges on § 16-24C-6(d):
“Whether or not the employee requests a hearing before the governing board or the president of the two-year institution, the chief executive officer shall give written notice to the employee of the decision regarding the proposed termination within 10 calendar days after the vote of the board or the decision of the president. If the decision follows a hearing requested by the employee, the *901 notice shall also inform the employee of the right to contest the decision by filing an appeal as provided in this chapter.”
(Emphasis added.) The essence of Cox’s argument is that the word “shall” in the statute creates a mandatory duty and that the Board’s failure to provide written notice within 10 days of its decision to terminate her employment negated all proceedings leading up to the Board’s decision. In support of this argument, Cox cites a number of cases, all of which were based on the former Teacher Tenure Act (“the TTA”), former § 16-24-1 et seq., Ala.Code 1975, which was repealed and replaced by the SFA. Cox first cites Birmingham City Board of Education v. Hawkins, 48 So.3d 638, 642 (Ala.Civ.App.2009), for the proposition that, under the TTA, “the superintendent must provide written notice of the cancellation [of employment] to the teacher within 10 days of that decision and inform the teacher of the right to contest that decision by filing with the superintendent a written notice of contest within 15 days of receipt of the notice.” However, Hawkins is inapposite because it did not address what, if any, sanction should be imposed for the failure to comply with the 10-day-notice provision at issue in that case because, in that case, the decision upholding the termination of Hawkins’s employment was reversed on the basis that Hawkins had not been afforded notice or a hearing before her employment was terminated. Cox cites Johnson v. Selma Board of Education, 356 So.2d 649 (Ala.1978), for the proposition that termination letters under prior tenure laws were mandatory. However, Johnson is inapposite because, like Hawkins, that case involved a termination without a hearing, not the failure to provide timely written notice of the results of a termination hearing. ' Cox also cites Ex parte Wilson, 984 So.2d 1161, 1170 (Ala.2007), for the proposition that appellate courts must “apply Alabama law as set forth in the [TTA] and court decisions interpreting the [TTA] and provisions of [a prior version of the TTA] that remain unchanged by ... amendments.” After considering the cases cited by Cox, we have determined that she has failed to direct this court to any decision addressing the 10-day-notice requirement of § 16-24C-6(d) of the SFA or its predecessors.
Further, Cox’s argument fails because the statute on which she would have us find that the Board had abandoned its decision to terminate her employment— i.e., § 16-24C-6(d) — makes no provision for such a result. Moreover, this court has held that a similar provision in the TTA was directory rather than mandatory. In Key v. Alabama State Tenure Commission, 407 So.2d 133 (Ala.Civ.App.1981), this court addressed the issue of timeliness in proceedings conducted under the TTA and corresponding due-process implications:
“Section 16-24-10(b) [of the TTA] provides a tenured teacher the right to appeal a contract cancellation. The statute provides specified time limits for different portions of the appeal process. Specifically, the statute provides that the board shall deliver a record of the teacher’s hearing to both the Commission and the teacher no later than twenty days after the day upon which the hearing took place. Furthermore, the Commission shall hold a hearing within forty days after the decision of the Board. The rule promulgated by the Commission as to the time period for filing the record with the Commission follows the statute specifically. In this case the termination hearing was held on June 17, 1980. Twenty days from this hearing was July 7, 1980, and the fortieth day was July 28,1980.
“On July 1, 1980 the Board requested that the Commission grant a seven day extension beyond July 7, 1980 in which *902 to file its copy of the record of Key’s termination hearing. The reason given for the extension request was the fact that two appeals against the Board were pending at the same time. Key’s attorney objected to the granting of an extension. It was not until July 9, 1980, two days after the Board’s record should have been filed, that the Commission granted a seven day extension. On the same day the Commission also extended its deadline for conducting a hearing beyond the forty day period. The Board filed a partial copy of the record within the seven day period, but failed to submit a copy of its decision and findings until July 18,1980, claiming the omission was inadvertent. The Commission affirmed the Board’s decision while denying Key’s timely motion to strike the Board’s record.
“On October 1, 1980 Key petitioned the Circuit Court of Henry County for a writ of mandamus directing the Commission to set aside its decision. Key contended that the extension of time granted by the Commission violated the express requirements of § 16-24-10, Code 1975. The circuit court denied the petition and Key appealed to this court.
“The major issue to be decided is whether the Commission had the authority to extend the time periods contained in § 16-24-10. The Commission contends that the use of the word ‘shall’ in the statute is meant only to be directory and not mandatory. The Commission also believes that such extensions should be allowed when either party can show necessity for such an extension of time. We agree with the Commission and affirm the judgment.
“In this case, as in all cases of statutory interpretation, we must consider the intent of the legislature in enacting the statute. Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978); Drake v. Pennsylvania Threshermen & Farmers’ Mutual Casualty Insurance Co., 265 Ala. 444, 92 So.2d 11 (1957). The statute in this case is very clear in its provisions. It precedes every provision with the word ‘shall.’ The word shall is normally considered to be mandatory, but in some cases has been held to be merely directory.
“It has been held that where a provision relates only to form or manner, it is directory. Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754 (Ala.1978); Board of Education of Jefferson County v. State, 222 Ala. 70, 131 So. 239 (1930). In the Mobile County case it was also stated that legislative intent controls over the use of the words ‘shall,’ ‘may,’ or ‘must.’ See also Morgan v. State, 280 Ala. 414, 194 So.2d 820, appeal dismissed, cert denied, 389 U.S. 7, 88 S.Ct. 47, 19 L.Ed.2d 6 (1967). The use of the word ‘shall,’ therefore, should not be construed as mandatory if the intent of the legislature shows that the term is merely directory.
“The purpose of the time periods listed in the act is to insure a speedy disposition of teacher tenure cases. Washington County Board of Education v. Alabama State Tenure Commission, 364 So.2d 338 (Ala.Civ.App.1978). It is clear, however, that extensions of time within which to adequately perform the functions required by the statute are necessary to insure both the Board and the teacher a full and fair hearing. In the present case the Board had two cases at the same time. It surely would have been extremely difficult for the Board to be able to prepare all of the necessary documents and submit them on time. Surely the legislature did not intend for the time limits to be so strictly construed as to preclude some reason *903 able extension where an undue burden would be placed on the Board or the teacher. Moreover, we do not find the Tenure Commission’s promulgated rule to be contrary to the above assessment of § 16-24-10.
“Appellant relies heavily on Washington County Board of Education, supra. That case, however, is clearly distinguishable from the present case because in that case the Washington County Board of Education faded to request an extension of time until after the statutory period had run. In the present case the Board made a timely request for an extension, even though the Commission failed to rule on the request until after the time period had run.
“Another purpose of the act is to insure the teacher a full and fair hearing. Due process dictates that the teacher have a full hearing. In Wright v. Board of School Commissioners of Mobile County, 394 So.2d 62 (Ala.Civ.App.1981), we upheld the right of the Commission to adhere to the strict time limitation. In that case, however, we indicated that in certain circumstances an extension might be granted by the Commission although we specifically stated that we would not adhere to a ‘substantial compliance’ doctrine. Due process, however, is not abrogated where no showing of prejudice is made and where the teacher is afforded a full and fair hearing without undue delay.
“The purpose of the [TTA] is clearly to afford the teacher every opportunity to have a complete hearing, and obviously the statute is meant to protect the teacher. However, we feel that in certain circumstances the Commission should be allowed to grant reasonable extensions of time to not only a board of education but also to the teacher.
“In the case at bar this court finds that such exigent circumstances were present so as to justify the Commission granting an extension. The Board made the request for an extension in a timely manner. Further,. the delay in filing some of the papers due to an inadvertent error surely was not sufficient to prejudice Key’s rights. Finally, the Commission can extend the time for the hearing for a reasonable period where necessary to insure a full and adequate hearing. The teacher has not shown that these extensions in any way prejudiced her rights. There is also no showing that the hearing was unfair. In these cases then it is clear that the legislature did not intend to unduly burden the Commission, but wanted only to insure a speedy hearing. As long as there is not an undue delay in the hearing, the Commission has authority to grant reasonable extensions of time to either party. We therefore conclude that the Commission properly exercised its authority in this case. As a result the judgment of the circuit court is affirmed.”
407 So.2d at 134-36.
Although, in this case, the Board did not request an extension, as did the board in Key, the crux of this court’s reasoning in Key was that “[d]ue process ... is not abrogated where no showing of prejudice is made and where the teacher is afforded a full and fair hearing without undue delay.” Id. at 135. The legislature’s intent in requiring the 10-day notice, as expressed in § 16-24C-6(d), is to timely “inform the employee of the right to contest the decision by filing an appeal as provided in this chapter” within the 15 days provided in subsection (e) of the statute, rather than, as Cox suggests, to avoid “placing a terminated teacher in a position of limbo, unable to make future plans.” Cox does not dispute that, at the conclusion of the *904 hearing, she was fully aware of the Board’s intent to terminate her employment and of her right to appeal that decision. Further, despite the fact that the Board was tardy in providing Cox with written notice of her termination, the last day the Board could have timely filed its 10-day notice was August 12, 2012, and the 15-day period for Cox to file her notice of appeal would have fallen on August 27, 2012, which is the day she in fact did file her notice of appeal. Cox does not identify any prejudice that she suffered as a result of the Board’s tardy notice; rather, she requests a strict application of the statute, which would simply force her and the Board to go back through the same termination process they have already completed. As noted, Cox has not argued or demonstrated that she was prejudiced by the Board’s tardy written notification, nor has she shown that she was denied procedural due process, that her hearings were unduly delayed, or that the hearings themselves were unfair, as contemplated in Key. Whether a longer or a more clearly prejudicial delay might constitute reversible error is not properly before us on these facts.
Cox next argues that the hearing officer erred by not overturning the Board’s decision on the basis that the termination of her employment was for personal and political reasons, in violation of § 16-24C-6(a), which provides:
“Tenured teachers and nonprobationary classified employees may be terminated at any time because of a justifiable decrease in the number of positions or for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, or other good and just cause, subject to the rights and procedures hereinafter provided. However, a vote or decision to approve a recommended termination on the part of a president of a two-year educational institution operated under the authority and control of the Department of Postsecondary Education or the governing board shall not be made for political or personal reasons.”
Cox argues that the decision to recommend termination of her employment was motivated by political or personal reasons and that the Board acted arbitrarily and capriciously in deciding to terminate her employment. Specifically, Cox argues that “[e]verything changed when ... Cox first requested something contrary to [her principal’s] wish by sending a letter asking to stay a fifth grade teacher in March, 2010.” Cox argues that her students performed well on standardized tests, she generally argues in mitigation of the facts presented by the Board, and she suggests that Cheryl Chapman, the principal of her school, sought out reasons to terminate her employment. Cox cites Cahalane for the general proposition that a hearing officer is limited to the record before him or her, and she cites a case from the United States Court of Appeals for the Second Circuit for a definition of “arbitrary and capricious.” Cox provides no other authority to support her allegation that “there was clear and convincing evidence that the Board acted arbitrarily and.capriciously.”
“Inapplicable general propositions are not supporting authority, and an appellate court has no duty to perform a litigant’s legal research. Legal Systems, Inc. v. Hoover, 619 So.2d 930 (Ala.Civ.App.1993); Lockett v. A.L. Sandlin Lumber Co., 588 So.2d 889 (Ala.Civ.App.1991); and Moats v. Moats, 585 So.2d 1386 (Ala.Civ.App.1991). Similarly, appellate courts do not, ‘based on undeli-neated propositions, create legal arguments for the appellant.’ McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992). This court will address only those issues properly presented and for which supporting authority has been cited. Simonton v. Carroll, 512 So.2d 1384 (Ala.Civ.App.1987).”
*905 Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996)
Moreover, even if Cox had offered proper legal authority in support of her argument, her own recitation of the circumstances leading up to her dismissal shows that the Board was presented with extensive documentation of allegations of questionable behavior, classroom mismanagement, and failure to follow directives. The record contains testimony and documentary evidence reflecting that Cox made racially derogatory comments regarding students and coworkers, that she made comments about a student’s weight, that she had inappropriately tape-recorded her classes for disciplinary purposes, that teachers in rooms adjacent to Cox’s classroom had been regularly disrupted by Cox’s unruly classroom, that Chapman had observed poor classroom management when she visited Cox’s classroom, that Cox had made negative comments to cafeteria staff, that Cox had failed to properly clock into work, that Cox had displayed an inappropriate picture to coworkers, that Cox had failed to follow directives to correct these issues, and that Cox had spoken harshly to students, one of whom had threatened to bring his father’s gun to school to kill himself and Cox.
“In this case, the Board received evidence and was the trier of fact. The hearing officer was asked to review the Board’s decision based on that evidence. Thus, as indicated above, the hearing officer in this case was required to afford deference to the decision of the Board, even if he would have reached a different result than did the Board. § 16-24C-6(e); Bishop State Cmty. Coll. v. Thomas, [13 So.3d 978 (Ala.Civ.App.1978) ]; Ex parte Dunn, [962 So.2d 814 (Ala.2007) ]. In other words, the hearing officer in this case did not receive evidence, and, in reviewing the record of the proceeding before the Board, he was in no better position than is this court to review the decision reached by the Board after the presentation of evidence.”
Cahalane, 117 So.3d at 368. Cox’s arguments go to the weight of the evidence presented to the Board rather than revealing an arbitrary, capricious, personal, or political decision. Aside from her bare allegations that “[everything changed” after Cox asked to remain a fifth-grade teacher, Cox identifies no other evidence in the record to suggest that Chapman’s inquiries into Cox’s behavior and performance as a teacher were personally or politically motivated or otherwise inconsistent with Chapman’s duties as the principal of an elementary school. That Cox, the hearing officer, or this court could have reached a different decision based on the .evidence presented does not obviate the fact that the Board was the trier of fact. We cannot reweigh the evidence, and absent a clear showing that the hearing officer affirmed an arbitrary and capricious decision by the Board, we cannot disturb that decision on appeal.
Cox has failed to demonstrate that she, was prejudiced by the Board’s delay in providing her with written notice of her termination or that she was denied procedural due process as a result of the delay, and she has failed to demonstrate that the Board’s decision was arbitrary and capricious. Therefore, applying the required “extremely deferential” standard of review, we affirm the hearing officer’s decision upholding the Board’s decision to terminate Cox’s employment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.